# UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

| | |
|---|---|
| Rasheed Bascombe-Darby<br><br>Plaintiff,<br><br>V.<br><br>Equifax Information Services, LLC.,<br><br>Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

1. I, Rasheed Bascombe-Darby, appearing pro se, bring this action for statutory, actual, and punitive damages against Defendant Equifax Information Services, LLC ("Equifax") for multiple, serious violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*

2. Equifax has reported my consumer credit file riddled with internal mathematical impossibilities, duplicate tradelines, contradictory account statuses, incomplete data fields, and inaccurate payment histories all of which constitute violations of Equifax's obligations as a consumer reporting agency under the FCRA.

3. These violations are not clerical trivialities. They include account balances that numerically exceed the stated high credit figures a logical impossibility duplicate tradelines for the same account number reporting different financial figures, payment histories that are internally inconsistent, and an undecipherable tradeline name that renders the disclosure meaningless to any reasonable consumer.

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

4. Equifax's conduct has caused me concrete, particularized harm, including severe emotional distress, impaired creditworthiness, and diminished access to credit. These harms satisfy Article III standing requirements under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), as the inaccuracies in my file have been communicated to third parties, including creditors and prospective lenders, causing real-world consequences indistinguishable from common-law defamation injuries.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331, as this action arises under a federal statute.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because I reside in this judicial district, and a substantial part of the events and omissions giving rise to the claims occurred here. Specifically, I reside at 83 Egmont Street, Apt. 5, Brookline, Massachusetts 02446, which falls within the District of Massachusetts.

## PARTIES

7. I, Rasheed Bascombe-Darby, am a natural person residing at 83 Egmont Street, Apt. 5, Brookline, Massachusetts 02446. I am a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

8. Defendant Equifax Information Services, LLC is a limited liability company organized and

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

existing under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax regularly conducts business throughout the United States, including in the Commonwealth of Massachusetts.

9. At all relevant times, Equifax was and is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f), engaged in the business of assembling, maintaining, and disseminating consumer credit information for monetary compensation.

## FACTUAL ALLEGATIONS

### A. The Equifax Consumer Disclosure

10. On or about December 12, 2025, I obtained a copy of my consumer file disclosure from Equifax (Confirmation No. 5346561037) ("the Disclosure"), which is attached hereto as Exhibit A.

11. Upon careful review of the Disclosure, I identified multiple categories of inaccuracy, internal contradiction, and incomplete reporting, each of which is described in detail below.

### B. Duplicate Tradelines ED Financial/ESA

12. The Disclosure contains two separate tradelines, both identified as "ED FINANCIAL/ESA Closed," both bearing the account number ending in *0126, both with the same date opened (03/08/2021), and both showing the identical date of last payment (10/27/2025) and date closed (10/27/2025).

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

13. The two tradelines purport to represent different loans the first reporting a High Credit of $2,000 with a most recent balance of $2,119, and the second reporting a High Credit of $4,500 with a most recent balance of $4,768.

14. Reporting the same account twice under the same account number constitutes inaccurate reporting under 15 U.S.C. § 1681e(b), which requires Equifax to "follow reasonable procedures to assure maximum possible accuracy" of all information it reports. It also doubles the negative payment history being reported against me, compounding the damage to my creditworthiness.

15. The duplicated negative payment history including 90-day, 150-day, and 180-day late payment designations artificially inflates the apparent severity and frequency of delinquency in my credit profile in a manner that is not reflective of actual account conduct.

### C. Mathematical Impossibilities Balances Exceeding High Credit

16. For both ED Financial/ESA tradelines, the current account balances, as of the most recent 24-month history entries, exceed the stated High Credit figure for each account.

17. For the first ED Financial/ESA tradeline (High Credit: $2,000): the 24-month history shows balances of $2,119 (10/25), $2,114 (09/25), $2,109 (08/25), $2,105 (07/25), $2,100 (06/25), $2,096 (05/25), $2,091 (04/25), $2,086 (03/25), $2,082 (02/25), and $2,078 (01/25) — every single month's balance exceeds the stated $2,000 High Credit figure.

18. For the second ED Financial/ESA tradeline (High Credit: $4,500): the 24-month history shows balances of $4,768 (10/25), $4,757 (09/25), $4,747 (08/25), $4,737 (07/25), $4,726 (06/25), $4,716 (05/25), $4,705 (04/25), $4,695 (03/25), $4,685 (02/25), $4,675 (01/25), $4,665

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

(12/24), $4,654 (11/24), $4,644 (10/24), $4,634 (09/24), $4,623 (08/24), $4,613 (07/24), $4,602 (06/24), $4,592 (05/24), $4,582 (04/24), $4,572 (03/24), $4,561 (02/24), $4,551 (01/24), and $4,541 (12/23) every single reported balance exceeds the stated $4,500 High Credit figure.

19. The "High Credit" field, by definition, is supposed to reflect the highest balance ever reached on the account. It is a mathematical and logical impossibility for any reported balance to exceed the High Credit figure. The presence of consistent, months-long balance figures exceeding the stated High Credit demonstrates that either (a) the High Credit figure is understated and inaccurate, (b) the balance figures are overstated and inaccurate, or (c) both fields are inaccurate.

20. This type of internal contradiction a mathematical impossibility embedded in the reporting data is precisely the kind of inaccuracy that courts in this circuit have found actionable under 15 U.S.C. § 1681e(b). See *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (internal inconsistencies in credit reporting probative of failure to maintain reasonable procedures); *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

**D. Contradictory Balance Reporting "$0" Header vs. Non-Zero 24-Month History**

21. The header section of both ED Financial/ESA tradelines states "Balance: $0." However, the 24-month history section of both tradelines shows non-zero balances in every single reported month, including the most recent entry of October 2025 ($2,119 and $4,768, respectively).

22. These two representations a $0 balance in the summary header and thousands of dollars in the detailed history are irreconcilable. A consumer reading this file cannot determine whether the accounts have a zero balance or a substantial outstanding balance. This ambiguity directly

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

impairs the ability to dispute or understand the nature of the debt, in violation of 15 U.S.C. § 1681g(a)'s requirement that file disclosures be "clear and accurate."

### E. Internal Payment History Contradiction ED Financial/ESA

23. Both ED Financial/ESA tradelines list "Date of 1st Delinquency: 12/01/2024." Under Metro 2 reporting standards and the FCRA, the Date of First Delinquency (DOFD) is the date of the first missed payment that led to the account's ultimate delinquency. If the first delinquency occurred on December 1, 2024, I would expect the payment history grid to show the account as paid on time or with a missed payment in November or December 2024.

24. However, the annual payment history grid for both tradelines shows the following for 2025: January 90 days past due; February 90 days past due; March 150 days past due; April 180 days past due; continuing through September 180 days past due. The account reaches 90-day delinquency status in January 2025, yet the DOFD is listed as December 1, 2024.

25. Additionally, the annual payment history grid shows all of 2024 as paid on time with checkmarks for every month. Yet the DOFD is December 1, 2024, and the 24-month history shows past-due amounts beginning in January 2025. This sequence is internally inconsistent: an account cannot simultaneously show as paid on time in December 2024 (per the annual grid) while having a first delinquency of December 1, 2024.

# UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS

## F. Lead Bank Balance Exceeds Credit Limit; Inconsistent High Credit Narrative Code

26. The Lead Bank secured credit card tradeline (Account *6290) shows a Credit Limit of $100 and a High Credit of $147. The tradeline contains Narrative Code 233, which is defined in the report as "Amount in High Credit Column is Credit Limit."

27. However, $147 ≠ $100. If Narrative Code 233 means that the High Credit column reflects the credit limit, then the credit limit should be $147, not $100 or conversely, the High Credit should be $100, not $147. These figures are irreconcilable. Equifax is simultaneously representing two different numbers as the credit limit through conflicting data fields on the same tradeline.

28. Furthermore, the 24-month history for August 2025 shows a balance of $147 against a $100 credit limit. A balance of $147 on a $100 credit limit means the account was over-limit by 47% a significant negative factor in credit scoring models yet the tradeline header status reads "Pays As Agreed." These statuses are facially inconsistent.

## G. Undecipherable Tradeline Name SBNASLFLDR

29. The Disclosure contains a tradeline identified only as "SBNASLFLDR Closed." The tradeline contains no explanation or expansion of this acronym or abbreviation. The furnisher address is PO Box 11, Southlake, TX 76092 with phone number (877) 883-0999 the same address and phone number used by Lead Bank in the same Disclosure.

30. A consumer reading their credit file is entitled, under 15 U.S.C. § 1681g(a)(1), to a clear and accurate disclosure of all information in their file, including the source of that information. A tradeline bearing the meaningless designation "SBNASLFLDR" does not allow any reasonable

and Bank Behavior Reveals Credit Limit Inconsistency High Credit, harman's Closed

26. The High Credit column of credit card tradeline Account #6290) shows a Credit Limit of $100 and a High Credit of $147. The tradeline contains Narrative Code 225, which is defined in the report as "Amount in High Credit column is Credit limit."

27. However, if a $100 H Narrative Code 225 means that the High Credit column reflects the credit limit, then the credit limit should be $147, not $100. Conversely, the High Credit should be $100, not $147. These figures are irreconcilable Equifax is simultaneously representing two different numbers as the credit limit through conflicting data fields on the same tradeline.

28. The history of the 24-month history for August 2025 shows a balance of $147 against a $100 limit. A balance of $147 on a $100 credit limit means the account was over-limit by 47%, a significantly negative factor in credit scoring models, yet the tradeline header status reads "Pays As Agreed." Those statuses are mutually inconsistent.

C. Underphabetabile Tradeline Name SENASURFLOR

29. The Disclosure contains a tradeline identified only as "SUNASURFLOR" closed. The tradeline contains no explanation of expansion of this acronym or abbreviation. The furnisher address is P. O. Box 11, Southlake, TX 76092 with phone number (877) 585-0398, the same address and phone number used by Lend Bank in the same Disclosure.

30. A consumer cannot log their credit file if enclosed under 15 U.S.C. § 1681g(a)(1) is a clear and accurate disclosure of all information in their file, including the source of that information. A tradeline bearing the meaningless de Acronym "SENASURFLOR" does not show any reasonable

consumer to identify the creditor, understand the nature of the account, or formulate a meaningful dispute.

31. The FTC has long interpreted 15 U.S.C. § 1681g(a) to require that consumer disclosures include information sufficient to allow consumers to identify and investigate their accounts. See FTC Advisory Opinion to Darcy (June 30, 2000). Reporting an account under a garbled, unidentifiable internal code rather than the creditor's actual name defeats this purpose entirely.

### H. Incomplete Data Fields Throughout the Disclosure

32. The Disclosure contains numerous data fields that are blank or masked where information should exist. Specifically: account numbers are truncated to the last four digits only across all tradelines; the "Last Payment Date" field within the 24-month history for Lead Bank and ED Financial/ESA is blank for numerous months despite active account activity being reported; and multiple Past Due Amount fields are blank for months where the payment history grid shows delinquency status.

33. Equifax maintains, and regularly provides to furnishers and creditors, the complete account number and other identifying information contained in its internal file. Providing me with a truncated, materially incomplete version of my own file while providing complete data to third parties violates 15 U.S.C. § 1681g(a), which entitles me to disclosure of "all information in my file." See *Washington v. Equifax*, No. 3:19-cv-00154 (M.D. Tenn. 2019).

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

### I. Santander Bank N.A. Stale Last Payment Date Data

34. The 24-month history for the Santander Bank N.A. auto loan (Account *1000) shows "Last Payment Date: 12/03/2023" for both January 2024 and February 2024. For a monthly payment account, the Last Payment Date should update each month to reflect the actual date of the most recent payment. Reporting the identical payment date across two consecutive monthly reporting periods, particularly where the balance is changing month to month, is indicative of frozen or stale data being re-reported without fresh investigation a failure of reasonable procedures under 15 U.S.C. § 1681e(b).

### J. Equifax's Conduct Was Willful, or in the Alternative, Negligent

35. The inaccuracies described above are not isolated data entry errors. They reflect systemic failures in Equifax's reinvestigation and data quality procedures. The mathematical impossibilities multiple consecutive months where reported balances exceed the High Credit figure could not have been generated by a system operating under reasonable accuracy procedures.

36. Equifax has been a defendant in thousands of FCRA lawsuits and has been the subject of CFPB supervisory and enforcement actions, including the January 2025 Consent Order entered between the CFPB and Experian Information Solutions, Inc. regarding similar systemic data quality failures at a peer credit reporting agency. Equifax operates with full knowledge of its obligations under the FCRA and of the types of data quality failures that constitute violations. Its

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

continued failure to maintain reasonable accuracy procedures in light of this knowledge constitutes willful disregard of consumers' rights under the FCRA. See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007) ("willful" under FCRA includes reckless disregard of statutory requirements).

37. In the alternative, Equifax's failures are, at minimum, negligent violations of the FCRA, actionable under 15 U.S.C. § 1681o.

### K. Actual Harm to Plaintiff

38. As a direct and proximate result of Equifax's inaccurate and incomplete reporting of my consumer file, I have suffered concrete and particularized harm, including:

a. Emotional distress, including anxiety, loss of sleep, and mental anguish caused by the discovery of materially inaccurate data on my credit file that I cannot effectively dispute due to the incomplete and contradictory nature of the reporting.

b. Impaired creditworthiness resulting from artificially inflated delinquency history caused by the duplicate ED Financial/ESA tradelines, each independently reporting 90-day, 150-day, and 180-day late payments for the same underlying debt.

c. Diminished access to credit, including being unable to obtain credit on terms reflective of my true creditworthiness.

d. Out-of-pocket expenses and time costs associated with investigating, identifying, and attempting to remediate the inaccuracies in my credit file; and

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

e. Reputational harm, as the inaccurate information in my Equifax file has been and will continue to be disseminated to third parties, including prospective creditors and employers who access my Equifax consumer report.

## COUNT I

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**15 U.S.C. § 1681e(b)**

39. I re-allege and incorporate by reference paragraphs 1 through 38 as if fully set forth herein.

40. At all relevant times, Equifax was and is a consumer reporting agency subject to the requirements of 15 U.S.C. § 1681e(b), which mandates that whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

41. Equifax violated 15 U.S.C. § 1681e(b) by preparing and disseminating consumer reports concerning me that contained: (a) duplicate tradelines for a single account; (b) mathematical impossibilities in the form of reported balances that exceed stated High Credit figures over consecutive months; (c) internally contradictory balance data ($0 in header vs. thousands in 24-month history); (d) inconsistent credit limit figures within the same tradeline; (e) internally inconsistent delinquency dating; and (f) stale last-payment date data.

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

42. These violations were willful within the meaning of 15 U.S.C. § 1681n, as they reflect reckless disregard of my rights under the FCRA, or in the alternative, negligent under 15 U.S.C. § 1681o.

43. As a direct and proximate result of Equifax's violations of § 1681e(b), I have suffered actual damages, including emotional distress, impaired creditworthiness, diminished access to credit, and reputational harm.

44. I am entitled to recover: (a) statutory damages of not less than $100 and not more than $1,000 per willful violation under 15 U.S.C. § 1681n(a)(1)(A); (b) punitive damages under 15 U.S.C. § 1681n(a)(2); (c) actual damages under 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1); and (d) costs of suit under 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

## COUNT II

**Failure to Provide Clear and Accurate Disclosure of File Contents**

**15 U.S.C. § 1681g(a)**

45. I re-allege and incorporate by reference paragraphs 1 through 38 as if fully set forth herein.

46. Section 1681g(a) of the FCRA requires that every consumer reporting agency, upon request, clearly and accurately disclose to the consumer "all information in the consumer's file at the time

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

of the request," including the sources of that information.

47. Equifax violated 15 U.S.C. § 1681g(a) by: (a) providing a file disclosure containing internally contradictory data fields that cannot be reconciled and thus cannot be considered "clear and accurate"; (b) identifying a creditor by the garbled, meaningless designation "SBNASLFLDR" rather than the creditor's actual name, preventing me from identifying the source of the information; (c) omitting complete account numbers, which are part of my file; and (d) presenting balance figures in the summary header and the 24-month history that are directly contradictory, leaving me unable to determine the actual balance on the ED Financial/ESA accounts.

48. Equifax's failures under § 1681g(a) are willful, or in the alternative, negligent. Equifax maintains the complete underlying data in its files and has the capability to provide clear and accurate disclosure but fails to do so as a matter of practice.

49. As a direct and proximate result of Equifax's violations of § 1681g(a), I have suffered the actual harms described in paragraph 38, including the inability to effectively identify or dispute the inaccurate and incomplete information in my file.

50. I am entitled to recover all damages and relief available under 15 U.S.C. §§ 1681n and 1681o, as set forth in paragraph 44.

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

## **PRAYER FOR RELIEF**

WHEREFORE, I, Rasheed Bascombe-Darby, respectfully request that this Court enter judgment in my favor and against Defendant Equifax Information Services, LLC, and award the following relief:

a. Statutory damages of not less than $100 and not more than $1,000 per willful violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Actual damages in an amount to be proven at trial, pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), including but not limited to damages for emotional distress, reputational harm, and financial loss;

c. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for Equifax's willful and reckless disregard of my rights under the FCRA;

d. Costs of suit pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

e. An order pursuant to 15 U.S.C. § 1681i directing Equifax to investigate and correct the inaccuracies identified in this Complaint;

f. Pre-judgment and post-judgment interest as permitted by law; and

g. Such other and further relief as the Court deems just and proper.

**UNITED STATES DISTRICT COURT OF THE MASSACHUSETTS**

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), I demand a trial by jury on all issues so triable.

Respectfully submitted,

*Rasheed Bascombe-Darby*

Date: March 5, 2026

Rasheed Bascombe-Darby

83 Egmont St. APT 5

Brookline, MA 02446-6878

darbyrasheed@gmail.com

Pro Se Plaintiff